**In re VISION INVESTMENT GROUP, INC., Debtor.**

**No. 97–1035 B.**

United States Bankruptcy Court, W.D. New York.

Sept. 22, 2005.

---

Hodgson Russ LLP, Buffalo, NY (Garry M. Graber, of counsel, Julia S. Kreher, of counsel), for Securities Investor Protection Corporation, Trustee for the Liquidation of the business of Vision Investment Group, Inc.

John J. Miller, P.C., Kansas City, MO (John J. Miller, of counsel), for Robert Jurgensmeyer.

## DECISION & ORDER

CARL L. BUCKI, Bankruptcy Judge.

In this proceeding under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa–78lll ("SIPA"), the Securities Investor Protection Corporation ("SIPC") objects to a claim filed on behalf of a purported customer of the debtor, for damages arising from a failure to complete a sale of stock. The central issue is whether the claimant can hold the priority status of a customer under SIPA, even though the debtor had returned the stock to the claimant prior to commencement of the current proceeding.

Vision Investment Group, Inc. ("Vision"), operated a securities brokerage until February 3, 1997. On that date, the United States District Court for the Western District of New York made findings that customers of Vision needed the protections afforded by SIPA. Based upon these findings and pursuant to 15 U.S.C. § 78eee(b), the District Court appointed SIPC to serve as trustee for the liquidation of Vision's business and issued an order removing the liquidation proceeding to the Bankruptcy Court. In the context of this proceeding, Robert Jurgensmeyer filed a customer claim for cash in the amount of $950,513.50. After reviewing this claim, SIPC issued notice that the claim would be denied. When the claimant then filed opposition to this determination, SIPC made the present motion to uphold the denial of Mr. Jurgensmeyer's customer claim.

SIPA provides special protection for customer investments in the event of a liquidation of a broker or dealer of securities. As stated in 15 U.S.C. § 78fff(a)(1), a liquidation proceeding under SIPA aims "as promptly as possible after the appointment of a trustee ... (A) to deliver customer name securities to or on behalf of the customers of the debtor entitled thereto ... and (B) to distribute customer property and (in advance thereof or concurrently therewith) otherwise satisfy net equity claims of customers to the extent provided in this section." To these ends, 15 U.S.C. § 78fff–2(c)(1) requires a trustee to allocate customer property to the benefit of customer claims, before such property becomes available to the debtor's gener-

al estate for the benefit of other unsecured creditors. Subject to the limitations in 15 U.S.C. § 78fff–3(a), SIPC will advance funds for payment on account of customer claims. General unsecured claims enjoy no similar protection. For Mr. Jurgensmeyer, therefore, the probability of recovery would be materially enhanced if this court were to recognize his entitlement to a customer claim, as opposed to a general unsecured claim.

The claim of Robert Jurgensmeyer arises from events that occurred more than one year before the order appointing SIPC as trustee for Vision. During or prior to October of 1995, at the suggestion of an employee of Vision, Mr. Jurgensmeyer had acquired 97,500 shares of Auxer Industries, Inc. These shares were then held in an account that was serviced by Vision, but which was maintained at Cantella & Co., Inc., a correspondent clearing broker. Mr. Jurgensmeyer instructed Vision to sell the Auxer stock. Although Jurgensmeyer received written confirmation that such a sale occurred on October 26, 1995, Vision in actuality had failed to complete the desired transaction. Upon learning of this failure, Jurgensmeyer directed that custody of the stock be transferred to another broker. This new broker eventually sold the stock sometime after the transfer of custody in December 1995. However, between October 26 and the eventual date of sale, the value of the stock had declined. In the present context, Jurgensmeyer seeks to recover this loss as a claim for cash. Although Jurgensmeyer originally filed a claim for a loss in the amount of $950,513.50, he now agrees that any priority entitlement is limited to $100,000.00, that being the statutory cap

established under 15 U.S.C. § 78fff–3(a)(1).

In objecting to the Jurgensmeyer claim, SIPC argues that the claimant does not qualify as a customer of the debtor. Rather, SIPC contends that the debtor acted as a mere "introducing broker," within a fully disclosed relationship in which Cantella & Co., Inc., performed the duties of a clearing broker. Asserting that Vision did not receive, acquire or hold investor securities or cash, SIPC argues that the only relevant customer relationship involved Cantella, not Vision. With no evidence of any unlawful conversion or sale by Vision, SIPC believes that no customer liability derives through the debtor. In response, the holder of the Jurgensmeyer claim[1] contends that customer protection depends not upon the clearing status of a brokerage firm, but on the nature of the claim and the purpose of the account. The claimant argues that pursuant to 17 C.F.R. § 300.501(a), an authorized securities sale is deemed to have occurred upon the broker's transmission of a written confirmation of sale to the customer. Having received such a written confirmation, Jurgensmeyer believes that he possesses a customer claim for cash as compensation for losses derived from the failure to complete the sale according to instruction.

Unfortunately, both parties rely upon citations to cases that do not involve the particular circumstance in which an aggrieved client had already recovered his shares of stock prior to a proceeding under SIPA. In my view, the court need not consider either the trustee's argument about distinctions between introducing and clearing brokers, or the claimant's argu-

---

**1.** Subsequent to the filing of his claim, Robert Jurgensmeyer assigned his interest to Boone County National Bank. This assignment does not impact the issues that this court must

decide, and Boone County National Bank continues to assert a claim in the name of Mr. Jurgensmeyer.

ment about the consequences of a written confirmation of sale. Rather, the court will sustain the trustee's objection for the simple reason that Mr. Jurgensmeyer does not satisfy the definition of a customer under SIPA.

■■■ Congress established SIPC for the purpose "of providing financial relief to the customers of failing broker-dealers with whom they had left cash or securities on deposit." *Sec. Investor Protection Corp. v. Barbour*, 421 U.S. 412, 413, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975). Consequently, a claim under SIPA must seek a recovery for either securities or cash. In the present instance, Mr. Jurgensmeyer received all of the stock that the debtor had held on his behalf, so that he could not possibly have a claim for securities. Instead, Jurgensmeyer asserted a "claim for cash", as defined by the following regulation:

> Where a SIPC member ("Debtor") held securities in an account for a customer, *the customer* has a "claim for cash" with respect to any authorized securities sale; (1) If the Debtor has sent written confirmation to the customer that the securities in question have been sold for or purchased from the customer's account; or (2) Whether or not such a written confirmation has been sent, if the securities in question have become the subject of a completed or executory contract for sale for or purchase from the account.

17 C.F.R. § 300.501(a)(emphasis added). In Jurgensmeyer's view, the existence of written confirmation of sale allows him to assert a "claim for cash" in the amount of any damages that he may have incurred. Such an interpretation, however, overlooks the express language of both the statute and the regulation, that claims under SIPA inure only to the benefit of customers. In the section authorizing distributions, the statute provides that after receipt of a written statement of claim, "the trustee shall promptly discharge, in accordance with the provisions of this section, all obligations *of the debtor to a customer* relating to, or net equity claims based upon, securities or cash ...." 15 U.S.C. § 78fff–2(b)(emphasis added). Similarly, even in the event of a written confirmation of sale, the above quoted text of 17 C.F.R. § 300.501(a) gives only to customers the right to assert a claim for cash. In considering the presently disputed claim, therefore, this court must initially determine whether Mr. Jurgensmeyer holds the status of a customer.

■■■ SIPA establishes the controlling definition of "customer," as follows in relevant part:

> The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) *who has a claim on account of securities* received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.

11 U.S.C. § 78lll(2)(emphasis added). To be a customer for purposes of the statute, therefore, one must have "a claim on account of securities." In the present instance, Jurgensmeyer had already recovered his securities long prior to commencement of liquidation proceedings. Thus, he holds a claim not on account of those securities, but for damages arising from some conduct with respect to securities for which the debtor has already accounted.

To whatever extent Mr. Jurgensmeyer may have had a claim for stock or cash deposits, that claim was fully settled when he accepted possession of the stock upon a transfer of custody to a new broker.

Thus, he had ceased being a customer, and no longer possessed a claim on account of securities. This is not to say that Jurgensmeyer might not have a claim for damages under some theory of contract or tort, by reason of an agent's failure to obey its principal's instructions for a timely sale of assets. That, however, does not constitute a claim on account of securities within the meaning of SIPA. For purposes of the present proceeding, Mr. Jurgensmeyer does not hold the status of the debtor's customer.

For the reasons stated herein, this court will uphold the trustee's denial of the claim of Robert Jurgensmeyer, in so far as he seeks a customer claim for a priority distribution under 15 U.S.C. § 78fff–2(c)(1).

So Ordered.