## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30528

United States Court of Appeals
Fifth Circuit

**FILED**
April 3, 2019

Lyle W. Cayce
Clerk

MARJORIE SHEPHERD, on behalf of Estate of John Shepherd,

> Plaintiff – Appellant,

v.

CITY OF SHREVEPORT; PHILLIP TUCKER,

> Defendants – Appellees.

Appeal from the United States District Court
for the Western District of Louisiana

Before STEWART, Chief Judge, and DAVIS and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This lawsuit arises from the death of William Shepherd, who was shot and killed by Corporal Tucker of the Shreveport Police Department in October 2013. Mr. Shepherd's mother brought excessive force claims against the officer and the city. The district court granted summary judgment for the defendants. We AFFIRM.

I.

On October 15, 2013, Corporal Tucker was dispatched to Mr. Shepherd's home to assist the Shreveport Fire Department with a 911 call. Corporal Tucker was informed by dispatch that there was a potentially violent male who had possibly suffered a stroke and who the female caller feared might hurt her. While Corporal Tucker was en route, firefighters entered Mr. Shepherd's

home, encountered Mr. Shepherd with a knife in his hand, and fled the home. Mr. Shepherd followed them out into the yard but stopped at the sidewalk. The knife was later determined to be eight inches long with a four-inch blade. Dispatch updated Corporal Tucker that the subject was armed with a knife and directed that he expedite. During this time, a neighbor called 911 to erroneously report that shots had been fired, and dispatch then notified Corporal Tucker that there were reports of shots fired in the area.

Shortly after receiving the report of possible shots fired, Corporal Tucker arrived at Mr. Shepherd's home. He was the first police officer at the scene and the dash-mounted camera in his patrol car captured much of what followed in the next two minutes. Corporal Tucker retrieved his shotgun and approached the firetruck around which the firefighters had gathered. At that time, Mr. Shepherd was standing in the yard with a knife in his hand, positioned between the firetruck and the house. The firefighters identified Mr. Shepherd as the person with a knife and informed Corporal Tucker there was at least one person—the female caller—inside the home.

Corporal Tucker made multiple commands for Mr. Shepherd to "get down" and "lay down." Mr. Shepherd did not comply with those commands. During the entire encounter, Mr. Shepherd did not directly engage in dialogue with Corporal Tucker, but he cursed aloud at multiple times, stating "f--k you." After approximately thirty seconds of ignoring commands to get down in the yard, Mr. Shepherd began moving back towards the residence—where the female caller was believed to be—and Corporal Tucker commanded him to "come to me now." That was the only time during the encounter that Corporal Tucker directed Mr. Shepherd to move towards him. Mr. Shepherd did not comply with that command and walked into the residence's garage.

Mr. Shepherd was in the garage for approximately a minute. During that time, Corporal Tucker proceeded partially up the driveway to keep a

visual on Mr. Shepherd and gave him multiple commands to put his hands up. Mr. Shepherd disregarded those commands as well. Mr. Shepherd then exited the garage and began moving down the inclined driveway towards Corporal Tucker. At approximately 19:53:45 on the videotape captured by the patrol car's dash-mounted camera, Corporal Tucker can be seen backing down the driveway's incline. At approximately 19:53:49, Mr. Shepherd comes into the videoframe and can be seen moving down the driveway towards Corporal Tucker. At the same time, Corporal Tucker can be heard commanding Mr. Shepherd to "get back." However, Mr. Shepherd continued to move towards Corporal Tucker at a relatively quick speed, while Corporal Tucker continued to move backwards.

The parties dispute whether Mr. Shepherd had the knife raised over his head or at his side at this point. The parties also dispute whether Mr. Shepherd was accelerating or "stumbling" toward Corporal Tucker. On appeal, the appellant also alleges that there is a dispute over whether Mr. Shepherd and Corporal Tucker were ten feet or ten yards apart. But what is undisputed is that Mr. Shepherd continued to move towards Corporal Tucker with a knife in his hand, disregarded a command to get back, and Corporal Tucker shot him once with his shotgun at approximately 19:53:51 on the videotape. Mr. Shepherd died from the injury. He was fifty years old at the time.

Marjorie Shepherd, Mr. Shepherd's mother and the appellant in this case, subsequently filed a lawsuit in federal court against Corporal Tucker and the City of Shreveport, bringing excessive force claims under both 42 U.S.C. § 1983 and Louisiana state tort law. The district court had federal question jurisdiction over the Section 1983 claims, *see* 28 U.S.C. § 1331, and supplemental jurisdiction over the related state law tort claims, *see* 28 U.S.C. § 1367. The defendants eventually moved for summary judgment. Ms. Shepherd filed a response brief in opposition. Two weeks later, after the

defendants had filed their reply to Ms. Shepherd's response brief, Ms. Shepherd moved for leave to supplement her response brief.  The district court denied Ms. Shepherd's motion to supplement, as well as her subsequent motion to reconsider that denial.

The district court granted summary judgment for the defendants and dismissed all of Ms. Shepherd's claims with prejudice.  As to the Section 1983 claim against Corporal Tucker, the district court held that "[u]nder the totality of the circumstances and irrespective of whether the knife was over Shepherd's head or by his side, . . . Cpl. Tucker reasonably believed that Shepherd posed a threat of serious harm[.]"  As such, the district court held that Corporal Tucker's use of force was not excessive under the Fourth Amendment.  In the alternative, the district court held that even if his force was excessive, Corporal Tucker was entitled to qualified immunity because his actions were not objectively unreasonable in light of clearly established law.  For the Section 1983 claim against the City of Shreveport, the district court held the claim failed because there was no underlying constitutional violation.  And for the state law claims, the district court held that the analysis for Louisiana excessive force claims mirrors the analysis for Fourth Amendment excessive force claims and dismissed for the same reasons.

Ms. Shepherd filed a timely notice of appeal, and this court has jurisdiction under 28 U.S.C. § 1291.  On appeal, Ms. Shepherd argues that the district court erred by: (1) holding that Corporal Tucker's use of force was not excessive under the Fourth Amendment; (2) holding, in the alternative, that Corporal Tucker was entitled to qualified immunity; (3) holding that the defendants were not liable under Louisiana tort law, and (4) denying her motion to supplement her brief in opposition to summary judgment.

No. 18-30528

II.

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court." *DeVoss v. Sw. Airlines Co.,* 903 F.3d 487, 490 (5th Cir. 2018) (citation and quotation marks omitted). Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is not "material" unless its resolution would affect the outcome of the case. *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000). When reviewing summary judgment decisions, we generally construe all purported facts in the light most favorable to the non-movant. *Carnaby v. City of Houston,* 636 F.3d 183, 187 (5th Cir. 2011). However, when there is a videotape that discredits the non-movant's description of facts, we will "consider 'the facts in the light depicted by the videotape.'" *Id.* (quoting *Scott v. Harris,* 550 U.S. 372, 381 (2007)).

We review a district court's determination of state law de novo. *Salve Regina Coll. v. Russell,* 499 U.S. 225, 231 (1991).

We review a district court's denial of a motion to amend or supplement pretrial materials, such as briefs in opposition to summary judgment, for abuse of discretion. *See Reliance Ins. Co. v. La. Land & Expl. Co.,* 110 F.3d 253, 257 (5th Cir. 1997); *Barker v. Norman,* 651 F.2d 1107, 1128–29 (5th Cir. 1981).

III.

A.

First, we address the Section 1983 excessive force claim against Corporal Tucker. To prevail on a Section 1983 excessive force claim, "a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Harris v. Serpas,* 745 F.3d 767, 772 (5th Cir. 2014) (quoting

No. 18-30528

*Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)); *see also Graham v. Conner*, 490 U.S. 386, 393–97 (1989).   In this circuit, "the excessive force inquiry is confined to whether the officer was in danger at the moment of the threat that resulted in the officer's shooting.   Therefore, any of the officers' actions leading up to the shooting are not relevant[.]"  *Harris*, 745 F.3d at 772 (internal quotation marks, citation, and alterations omitted).   "Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others."  *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003).

Ms. Shepherd argues that the district court erred in determining that there was no genuine dispute as to whether Corporal Tucker's use of force was unreasonably excessive.   She argues that genuine disputes of material facts exist as to: (1) the distance between Mr. Shepherd and Corporal Tucker at the time the shot was fired; (2) the manner in which Mr. Shepherd approached when he was shot; and (3) the level of threat Mr. Shepherd presented with the knife when he was shot.   We address each alleged dispute in turn.

First, we consider the distance between Mr. Shepherd and Corporal Tucker when the shot was fired.   This is a primary focus of Ms. Shepherd's appeal.   In her original complaint, Ms. Shepherd alleged that Corporal Tucker was approximately eight to ten feet away when he fired.   Corporal Tucker and several witnesses also testified to that approximate distance of ten feet.   Ms. Shepherd did not dispute that distance in her brief in opposition to summary judgment.   As such, the district court determined that the distance at the time of the shooting was approximately ten feet.   Now on appeal, Ms. Shepherd tries to create a dispute by alleging that the distance was ten *yards* rather than ten feet.   Her counsel does so by misleadingly citing parts of the record which indicate that Corporal Tucker *tried* to maintain a ten-yard distance before Mr. Shepherd began moving towards him.

6

However, even if this court were willing to consider an issue that was conceded before the district court and then raised as a dispute for the very first time on appeal, that issue is discredited by the videotape in this case. Though the videotape is far from the paragon of clarity, it shows that the distance at the time of the shot was much closer to ten feet than to thirty feet. So, viewing this alleged factual dispute "in the light depicted by the videotape[,]" *Scott*, 550 U.S. at 381, we hold that there is no material issue of fact as to the distance between Mr. Shepherd and Corporal Tucker at the time of the shot. Counsel's attempt to manufacture a dispute over this point on appeal borders on frivolous.

Second, we consider the manner of Mr. Shepherd's approach at the time of the shot. Ms. Shepherd asserts that there are material disputes as to whether Mr. Shepherd was obeying Corporal Tucker's commands to leave the garage when he was shot and whether he was moving slowly at that time because he was staggering and stumbling. However, these assertions are also belied by the videotape. The videotape clearly shows that Corporal Tucker did not command Mr. Shepherd to leave the garage in the moments before he was shot; to the contrary, the videotape shows that Tucker instead ordered him to "get back." In addition, the videotape also shows that Mr. Shepherd was advancing down the driveway at a relatively quick speed in the final moments before being shot—in a motion that looks much more like directed running than errant stumbling. Thus, once again viewing this alleged factual dispute "in the light depicted by the videotape[,]" *Scott*, 550 U.S. at 381, we hold that there is no genuine issue of material fact on this issue either.

Third, we turn to the level of threat that Mr. Shepherd presented with the knife when he was shot. Ms. Shepherd repeats her argument, rejected by the district court, that the dispute over whether Mr. Shepherd had the knife up by his head or down by his side at the time when he was shot is material.

No. 18-30528

Her argument is that Mr. Shepherd could not have reasonably posed a threat if the knife was by his side. The videotape does not clearly show how Mr. Shepherd was holding the knife in the moments leading up to the shot. However, we agree with the district court that this dispute is not material to the outcome of the case. Under the totality of circumstances present in this case, even if we were to accept that Mr. Shepherd still had the knife at his side at the moment when he was shot, there is ample reason to conclude that he posed a real threat of serious bodily harm to the officer. As such, we hold that Corporal Tucker's use of deadly force was reasonable.

In addition, Ms. Shepherd's counsel repeatedly makes the assertion that knives cannot be used as projectile weapons, and states that a knife could not be a sufficient threat even at ten feet. Counsel cites no authority for this assertion; counsel simply proclaims it as if it is a fact. But it is not a fact. Furthermore, it disregards the actual fact that Mr. Shepherd was continuing to move toward Corporal Tucker even after being commanded to get back and having a shotgun pointed at him. Counsel's unsupported assertion that holding a knife could not pose a threat of serious bodily injury under the facts of this case is not sufficient to create a genuine issue of material fact.

As such, all of the alleged disputes raised by Ms. Shepherd in this appeal are either immaterial or discredited by the videotape, and we affirm the district court's judgment that Corporal Tucker's use of force was neither excessive nor unreasonable under the Fourth Amendment.

B.

Next, we address the district court's conclusion that, in the alternative, Corporal Tucker is entitled to qualified immunity. "Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." *Mace,* 333 F.3d at 623. For a right to be clearly established, "existing precedent must have placed the statutory or

constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).  The Supreme Court has repeatedly told courts not to define clearly established rights "at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotation marks and citation omitted).  "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.' . . . Such specificity is especially important in the Fourth Amendment context[.]" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

Ms. Shepherd argues that Corporal Tucker is not entitled to qualified immunity because "the constitutional right to be free of deadly force" is clearly established.  However, her argument lacks the level of specificity required to survive a motion for summary judgment.  *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("A qualified immunity defense alters the usual summary judgment burden of proof.  Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." (citation omitted)).

Caselaw at the time of the shooting (and at the time of this opinion) has not clearly established that it violates the Constitution for a police officer to shoot someone who is behaving erratically, advancing toward the police officer with a knife in his hand, and disregarding a command to get back.  Indeed, caselaw supports the opposite conclusion.  *See, e.g., Kisela*, 138 S. Ct. at 1150–55 (holding that it was not clearly established that an officer's use of deadly force was excessive when used against someone who continued to approach a bystander after ignoring commands to drop a knife); *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (holding that an officer did not use excessive force when the individual "ignored repeated instructions to put down the knife, . . . [was] in close proximity to [the officer], and [was] moving closer").

No. 18-30528

As such, even if Corporal Tucker's use of force was unreasonably excessive based on the totality of circumstances in this case (which we hold it was not), we also affirm the district court's alternate determination that Corporal Tucker is entitled to qualified immunity.[1]

C.

We now turn to the district court's summary judgment on the state law tort claims. The district court determined that a claim of excessive force under Louisiana tort law mirrors a claim of excessive force under the Fourth Amendment and granted summary judgment for the defendants accordingly. On appeal, Ms. Shepherd argues that the analysis for excessive force under Louisiana law materially differs from the analysis for excessive force under the Fourth Amendment. She also argues that she properly raised state law claims of negligence against the firefighters and dispatch personnel that are distinct from the excessive force analysis. We address each argument in turn.

First, we address Ms. Shepherd's argument that the analysis for excessive force under Louisiana law materially differs from the analysis for excessive force under the Fourth Amendment in this case. We reject this argument.

As the district court noted, excessive force claims under both federal and Louisiana law turn on whether the use of force was objectively reasonable given the totality of the circumstances. This has been widely recognized by this court, Louisiana federal district courts, and the Louisiana Supreme Court. *See, e.g., Delville v. Marcantel*, 567 F.3d 156, 172 (5th Cir. 2009) ("Louisiana's excessive force tort mirrors its federal constitutional counterpart. . . . 'Whether the force used is reasonable depends upon the totality of the facts

---

[1] "This circuit follows the rule that alternative holdings are binding precedent and not obiter dictum." *Melton v. Phillips*, 875 F.3d 256, 265 n.8 (5th Cir. 2017) (en banc) (quoting *United States v. Potts*, 644 F.3d 233, 237 n.3 (5th Cir. 2011)).

and circumstances in each case[.]' . . . These considerations are sufficiently similar to the *Graham* factors that our decision on this claim mirrors our decision of plaintiffs' § 1983 excessive force claim." (quoting *Kyle v. City of New Orleans*, 353 So. 2d 969, 973 (La. 1977))); *Reneau v. City of New Orleans*, No. 03-1410, 2004 WL 1497711, at \*4 (E.D. La. Jul. 2, 2004) ("Under Louisiana law, the same standard is used in analyzing a state law claim of excessive force as a constitutional claim, namely reasonableness under the circumstances. . . . As the Court has found that the officers acted reasonably under the circumstances, the Plaintiffs state law claims must fail as well."); *Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318, 323 (La. 1994) (stating that "[t]he *reasonableness* test we employed in *Kyle* is based upon the text of the Fourth Amendment to the United States Constitution[,]" and citing *Graham* in a footnote).

Ms. Shepherd nevertheless argues that the district court erred in granting summary judgment on her state law excessive force claims because at least one Louisiana appellate court has affirmed an excessive force inquiry that looked to the reasonableness of the events leading up to the use of force rather than just looking solely at the reasonableness at the moment of the threat, *see Harris v. Carter*, 768 So. 2d 827, 835 (La. App. 2d Cir. 2000), and because Louisiana negligence law allows for fault to be comparatively apportioned.

To our knowledge, the Louisiana Supreme Court has not spoken explicitly to the question of whether the reasonableness inquiry for excessive force under Louisiana tort law is limited to the moment of threat or if it should be expanded to consider the events leading up to it. However, we need not hazard an *Erie* guess here. Ms. Shepherd has failed to raise a genuine dispute of material fact that Corporal Tucker's actions were objectively unreasonable at any stage in the events leading up to the use of force, so under either

standard the outcome is the same.  Moreover, because Corporal Tucker acted reasonably, he did not breach any duty owed to Mr. Shepherd and there is no fault to comparatively apportion.  Therefore, the district court did not err in granting summary judgment to the defendants on the state law excessive force claims.

Second, we address Ms. Shepherd's argument that she properly raised state law claims of negligence pertaining to the firefighters and dispatch personnel that are distinct from the excessive force analysis.  We reject this argument as well.

Under the Federal Rules of Civil Procedure, a complaint needs to provide "a short and plain statement of the claim[.]"  Fed. R. Civ. P. 8(a)(2).  That statement needs to be sufficient to "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  In other words, "a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008).

In this case, Ms. Shepherd's complaint alleged that Corporal Tucker was at fault for using excessive force and that the city was at fault for failing to train and supervise Corporal Tucker.  Ms. Shepherd pleaded that firefighters were on the scene, but nowhere does her complaint say anything that would reasonably put the defendants on notice that she is alleging negligence on the part of either the firefighters or the dispatchers.  The first time that Ms. Shepherd comes close to articulating a clear allegation of negligence on the part of either the firefighters or the dispatchers is after the defendants moved for summary judgment, in her brief in opposition.

No. 18-30528

However, as a general matter, we "carefully scrutinize" any attempts to raise new theories of recovery after the opposing party has filed a motion for summary judgment. *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999). As such, we hold that the claims of alleged negligence on the part of the firefighters and the dispatchers were not properly raised before the district court and have no bearing on the analysis of the state law excessive force claims brought by Ms. Shepherd in this case. Furthermore, even if those claims had been properly raised before the district court, the argument that negligence on the part of the firefighters or the dispatchers was somehow responsible for Mr. Shepherd advancing towards Corporal Tucker with a knife in his hand while disregarding a command to get back is specious at best.

Therefore, we affirm the judgment of the district court granting summary judgment to the defendants on Ms. Shepherd's state law tort claims.

D.

Last, we address the district court's denial of Ms. Shepherd's motion to supplement her brief in opposition to summary judgment. Ms. Shepherd argues the district court abused its discretion when it denied her motion to supplement her brief. Ms. Shepherd states that the supplemental brief would have "represented mostly elaboration of points prior made" by expanding upon an expert report and developing arguments related to the alleged negligence of the firefighters and dispatch personnel.

The Federal Rules of Civil Procedure state that a pretrial schedule may be modified "only for good cause." Fed. R. Civ. P. 16(b)(4). "We consider four factors in determining whether the district court abused its discretion in [declining a motion to supplement a report considered at summary judgment]: '(1) the explanation for the failure to submit a complete report on time; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice.' " *Reliance Ins.*

13

*Co.*, 110 F.3d at 257 (alterations omitted) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

In this case, the first two factors weigh strongly in favor of affirming the district court's decision.  Ms. Shepherd offered no explanation for why the supplemental materials were not included in the first brief other than the statement that "[p]laintiff was unable to fully set forth all the grounds" in her original opposition brief.  And she did not explain why the addition to the expert's report was not ready to be timely submitted.  Likewise, she has failed to offer any better explanation on appeal.  Moreover, by her own description, the supplemental materials merely "represented mostly elaboration of points prior made."  As such, she falls far short of demonstrating that there was good cause for receiving a schedule adjustment to permit supplemental briefing.

District courts must have the power to control their dockets by holding litigants to a schedule.  *See Reliance Ins. Co.*, 110 F.3d at 258.  We hold that the district court did not abuse its discretion in this case when it denied Ms. Shepherd's motion to supplement her brief in opposition to summary judgment.

\* \* \*

Under the totality of circumstances present in this case, Corporal Tucker's use of deadly force was reasonable, and the district court did not abuse its discretion by denying Ms. Shepherd's motion to supplement her brief. The district court's order granting summary judgment for the defendants and dismissing all of Ms. Shepherd's claims with prejudice is AFFIRMED.